UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONALD F. McBETH ) <br> ) <br> *Plaintiff*, ) <br> ) <br> ) <br> v. ) <br> ) <br> ) <br> GREGORY I. PORGES, ) <br> SPECTRA FINANCIAL GROUP LLC, and ) <br> SPECTRA INVESTMENT GROUP LLC ) <br> ) <br> *Defendants*. ) <br> ) | No. 15-cv-02742 (JMF) |

**PLAINTIFF DONALD F. McBETH'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

HARRIS, ST. LAURENT &
CHAUDHRY LLP
40 Wall Street, 53rd Floor
New York, NY 10005
212-397-3370

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ............................................................................................... 1

**BACKGROUND** ........................................................................................................................ 3

    A.    Procedural History ........................................................................................................ 3

    B.    McBeth's Reliance on Performance History ................................................................ 4

    C.    McBeth's Discovery That the Performance History Was False and Misleading ............... 7

    D.    McBeth's Discovery That Defendants Engaged in Other Misconduct ............................. 8

    E.    Communications with Defendants' Counsel Regarding Proposed Amendment ................ 9

**ARGUMENT** .............................................................................................................................. 9

    I.    The TAC States Claims That Will Survive a Motion to Dismiss. ..................................... 10

    II.    Filing the Proposed Third Amended Complaint Will Not Prejudice Defendants Or Require Significant Additional Expense. ................................................. 13

**CONCLUSION** ........................................................................................................................ 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agerbrink v. Model Serv. LLC*,
   115 F. Supp. 3d 448 (S.D.N.Y. 2016) .................................................................................. 10

*Barkany Asset Recovery and Management v. Southwest Securities Inc.*,
   41 Misc.3d 673 N.Y.S.2d 458 (Sup. Ct. Kings Co. 2013) ..................................................... 13

*Caiola v. Citibank, N.A.*,
   295 F.3d 312 (2d Cir. 2002) .................................................................................................... 11

*Coraud LLC v. Kidville Franchise Co., LLC*,
   109 F.Supp.3d 615 (S.D.N.Y. 2015) ........................................................................................ 3

*DIMON, Inc. v. Folium, Inc.*,
   48 F.Supp.2d 359 (S.D.N.Y. 1999) .................................................................................. 11, 12

*DynCorp v. GTE Corp.*,
   215 F.Supp.2d 308 (S.D.N.Y. 2002) ...................................................................................... 12

*Estate of Ratcliffe v. Pradera Realty Co.*,
   2007 WL 3084977 (S.D.N.Y. Oct. 19, 2007) ......................................................................... 10

*Harding v. Naseman*,
   2008 WL 4900562 (S.D.N.Y. Nov. 14, 2008) ........................................................................ 12

*In re Pfizer Inc. Secs. Litig.*,
   2012 WL 983548 (S.D.N.Y. Mar. 22, 2012) .......................................................................... 10

*Kirk v. Metropolitan Transp. Auth.*,
   2001 WL 258605 (S.D.N.Y. Mar. 14, 2001) .......................................................................... 10

*Koch v. Greenberg*,
   626 Fed.Appx. 335 (2d Cir. 2015) .......................................................................................... 12

*LLBW Luxemburg S.A. v. Wells Fargo Sec. LLC*,
   10 F.Supp. 3d 504 (S.D.N.Y. 2014) ....................................................................................... 13

*New Yuen Fat Garments Factory Ltd. v. August Silk, Inc.*,
   2009 WL 1515696 (S.D.N.Y. June 1, 2009) .......................................................................... 10

*Patriot Exploration, LLC v. Sandridge Energy, Inc.*,
   951 F.Supp.2d 331 (D. Conn. 2013) ....................................................................................... 12

*Reisner v. General Motors Corp.*,
   511 F. Supp. 1167 (S.D.N.Y. 1981) ............................................................................... 9

*Sanchez v. ASA Coll., Inc.*,
   2015 WL 3540836 (S.D.N.Y. June 5, 2015) ................................................................ 10

*Sapirstein-Stone-Weiss Foundation v. Merkin*,
   950 F.Supp.2d 621 (S.D.N.Y. 2013) ............................................................................ 11

*Tahini Investments, Itd. v. Bobrowsky*,
   99 A.D.2d 489 N.Y.S.2d 431 (2d Dep't 1984) ............................................................. 12

**Statutes**

Fed. R. Civ. P. 15(a) ........................................................................................................... 9

Fed. R. Civ. P. 15(a)(2) ....................................................................................................... 9

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, Plaintiff Donald F. McBeth ("McBeth"), by and through his attorneys, Harris, St. Laurent & Chaudhry LLP, submits this Memorandum of Law in support of his Motion for Leave to File Third Amended Complaint. A copy of the proposed Third Amended Complaint ("TAC"), with the exhibits annexed thereto, is attached as Exhibit A.[1]

## PRELIMINARY STATEMENT

McBeth seeks leave to amend his complaint based upon documents obtained in discovery to add new fraud, breach of fiduciary duty, and breach of contract allegations based upon specific facts previously unknown to McBeth and that could not have been discovered by him through due diligence. This amendment, which is made to conform the pleadings to the evidence, is also fully consistent with the Court's Order resolving Defendants' motion to dismiss and will not require any changes to the current discovery schedule.

The Court previously denied Plaintiff's request for leave to amend (when it ruled upon the motion to dismiss the Second Amended Complaint) because, at that time, McBeth was not (and did not claim to be) "in possession of facts to meet the relevant pleading standard." (Opinion and Order filed March 21, 2016, Docket No. 33 (the "March 21 Order"), at 28.) McBeth has now learned from discovery that certain false and misleading statements were made by Defendants both to induce his investment in the Spectra Fund and to keep him invested in the Fund.

Specifically, Defendants produced documents during discovery revealing that Defendants' repeated written and oral statements about the performance history of the Spectra Fund's predecessor entities were false and misleading. The calculation of the disclosed returns

---

[1] A blackline of the Third Amended Complaint as compared to the Second Amended Complaint is attached hereto as Exhibit B.

1

secretly excluded a number of accounts managed by one of those entities in which significant losses occurred. Those losses were so dramatic that Defendant Gregory I. Porges ("Porges") was compelled to individually repay investors for the losses. The result of this deception was to artificially inflate the returns reported for 2004 and 2005 collectively for the four entities, and to even more dramatically inflate the cumulative return reported for those entities over time. For example, Defendants presented McBeth with materials which showed a 1,382.56 percent cumulative rate of return as of October 2008 (based largely on the artificially inflated early returns), compared to a -2.82% cumulative rate of return for the S&P 500.

Through discovery McBeth has also learned of new misconduct that supports his claims for breach of contract and breach of fiduciary duty. Porges transferred millions of dollars into and out of the Fund as purported "capital contributions" and "capital withdrawals" but did not maintain Book or Tax Capital accounts, or provide notice of the withdrawals as required by the LLC Agreement. By falsely characterizing these loans as capital contributions, Porges enabled the Fund to maintain leverage (and thereby be subject to risk) far beyond what would otherwise would have been permitted under the prime broker's rules.

Based on these facts—newly discovered in July, 2016—McBeth seeks to amend his Second Amended Complaint based on allegations closely tailored to these facts. The Court should grant this motion because the proposed Third Amended Complaint falls outside the scope of allegations that the Court previously found deficient in the March 21 Order, and because the Third Amended Complaint properly states claims based upon the newly discovered evidence.[2] Further, it would be unjust to hold McBeth to the terms of his earlier complaint given that he only learned of the existence of these new allegations based on documents produced in

---

[2] To a limited extent, the Third Amended Complaint also deletes allegations that related to claims dismissed by the Court and that do not relate to the new claims or to those claims that survived Defendants' motion to dismiss.

discovery.

## BACKGROUND

A.   Procedural History

McBeth initiated this case on April 8, 2015, and filed a Second Amended Complaint on June 24, 2015 (Dkt. No. 18).  Defendants moved to dismiss the Second Amended Complaint in its entirety on July 15, 2015 (Dkt. No. 19).

In the March 21 Order, the Court dismissed plaintiff's claims for misrepresentation, unjust enrichment, and promissory estoppel claims, and breach-of-contract claims premised on a theory of potential looting. (March 21 Order at 26) The Court ruled that Mr. McBeth's misrepresentation claims failed because of the non-reliance provision in the Offering Papers. (*Id.* at 14.) The Court acknowledged the rule that non-reliance clauses do not bar fraud claims based on facts peculiarly in the other party's knowledge, but emphasized that "[f]acts are peculiarly within a party's knowledge . . . only if they 'could not have been discovered with the exercise of due diligence.'" (*Id.* at 13-14 (quoting *Coraud LLC v. Kidville Franchise Co., LLC*, 109 F.Supp.3d 615, 620 (S.D.N.Y. 2015)).

Based on this rule, the Court rejected Plaintiff's reliance on "the fact that Porges had previously lost investment capital provided to him by outside investors" and "the fact that the Fund would be grossly undercapitalized" on the ground that "McBeth fail[ed] to allege that due diligence could not have revealed Porges' investment history or Spectra's capital (and, if he had, such a claim might have been implausible in any event)." (March 21 Order at 13-14.) The Court noted in particular that the Offering Papers "d[id] not make representations about *Porges'* past performance; [they] state[d] only that the *Spectra Fund* had not previously raised capital from outside investors *with respect to funds managed by Spectra Financial*." (*Id.* at 14 (emphasis in

3

original).)[3]

The Court also acknowledged that Porges could not take advantage of the non-reliance provision because he did not sign the Offering Papers in his personal capacity. But the Court found that the allegations with regards to Porges' were "insufficiently specific to support a fraudulent misrepresentation claim." (*Id.* at n. 7.)

With regards to McBeth's breach of fiduciary duty claims, the Court refused to dismiss the claims with one exception. The Court found that claims which were predicated on breaches of the reporting requirements contained in the Offering Papers would be duplicative of McBeth's breach of contract claims. (*Id.* at 21.)

B.   McBeth's Reliance on Performance History

McBeth previously has alleged (and continues to allege) that the stellar performance history that the Defendants provided to him was an important fact influencing his decision to invest in Spectra, and to remain invested in Spectra. These allegations assume far greater importance given the newly discovered information.

As explained in the TAC, in December 2008, Defendants provided McBeth with a Fourth Quarter 2008 Presentation (the "Q4 2008 Presentation") and a November 2008 Fact Sheet (the "November 2008 Fact Sheet") that highlighted remarkably successful historical returns during 2004 through the third quarter of 2008 (most of which was based on audited financial information) for four entities that Porges had previously managed: Managed Risk Trading, L.P. ("Managed Risk Trading"), Spectra Investments, LLC, Spectra Investment Group, LLC, and Spectra Capital Management, LLC. For 2004 and 2005, the documents claimed returns of 73.41

---

[3] The Court also rejected Plaintiff's argument that Defendants had secretly not intended to follow their stated investment strategy on the ground that this was "not the type of 'fact' to which the peculiar-knowledge exception applies." (March 21 Order at 14.)

4

percent and 85.87 percent in those two years, respectively, compared with returns of 8.99 and 3.00 percent for the S&P 500. (TAC Exhibits 2 and 3.)[4] The Q4 2008 Presentation contained a "Historical Performance Disclaimer" referred to an "accompanying statement of investment performance statistics" and noted that the audited statistics include the "combined performance of [Managed Risk Trading], [Spectra Investment Management], [Spectra Capital Management], and [Spectra Investments]… for each of the four years ended December 31, 2007." (See TAC Exhibit 3.)

In mid-2010—prior to Mr. McBeth's execution of the Offering Papers—Deborah Rose, Spectra's CFO, provided McBeth with a Second Quarter 2010 presentation (the "Q2 2010 Presentation") and a June 2010 fund fact sheet (the "June 2010 Fact Sheet") that contained substantially similar representations and included updated performance information. Like the Q4 2008 Presentation, the Q2 2010 Presentation referenced an "accompanying combined statement of investment performance statistics" including information "…for each of the six years ended December 31, 2009." (TAC Exhibits 4 and 5.)

The documents to which these written materials referred are each a Combined Statement of Investment Performance Statistics prepared by the certified public accountants for Spectra. In that document, Spectra's auditors state that the statement of performance results "presents in all material respects" the performance of the companies during the periods stated, and that the performance data "are fairly stated in all material respects." (TAC Exhibit 6.)

These statements about performance information were false and misleading because they purported to be based upon the entire performance of the four identified predecessor entities during the specified time periods. That was not, in fact, the case. Documents obtained during

---

[4] Citations in the format "TAC Exhibit __" refer to exhibits to the Third Amended Complaint.

discovery revealed for the first time that, in calculating the wildly successful returns included in these documents, Defendants excluded certain accounts managed by Managed Risk Trading during 2004 and 2005. It is also evident that these excluded accounts suffered larges losses. Following the collapse of the Spectra Fund, Rose revealed to McBeth that Porges had previously lost significant funds entrusted to him by outside investors and had to repay them for the losses. However, significant losses are not reflected in any of the historical returns, audited or otherwise, that the Defendants provided McBeth prior to his investment. Plainly, the accounts Rose was referring to were the excluded Managed Risk Trading accounts.

Defendants repeated the aforementioned false and misleading statements in communications with McBeth after he executed the Offering Papers. On October 27, 2010, Rose contacted McBeth by email (the "Oct. 27, 2010 Email") and stated (in the email and an accompanying letter that was from her and Porges) that Spectra had a "fiduciary responsibility" to inform him that the Fund was down 5.5 percent in its first month of operation. The email also enclosed an October 2010 fund fact sheet (the "October 2010 Fact Sheet"), which contained performance information through September 30, 2010. (TAC Exhibits 7 and 8.) As with the earlier performance information, the October 2010 Fact Sheet was false and misleading because it did not reveal that certain accounts of Managed Risk Trading with substantial losses were excluded in calculating the 2004 and 2005 annual returns and the cumulative return.

In the Oct. 27, 2010 Email, Defendants further noted that McBeth was "not legally obligated to fund [his] subscription and [could] choose to withdraw [his] subscription based on this information." McBeth would have taken advantage of this opportunity to withdraw if Defendants had informed him of the truth about the historical returns set forth in the October 2010 Fact Sheet. As with the false and misleading performance history provided to McBeth prior

investment, the inclusion of accounts with large losses would have materially altered the mix of information available to McBeth about performance and risk controls, and raised concerns about Porges' professional judgment.

C.  McBeth's Discovery That the Performance History Was False and Misleading

Defendants' fifth document production, transmitted to McBeth's counsel on July 13, 2016, included a chain of emails among Rose, auditors for Spectra, and an analyst from JPMorgan (the "June 25 Email Chain"). The email chain related to certain performance history that was being provided to the JPMorgan analyst.

In an email dated June 25, 2010 at 2:40 pm, Rose appeared to be providing follow-up materials to the analyst. She stated that she was transmitting "positions in [Managed Risk Trading] for 2004 and 2005 as compiled by the auditors," and she enclosed the Combined Statement of Investment Performance Statistics. Rose closed her email by indicating that she would call the analyst shortly to discuss any questions. At 3:58 pm, the analyst forwarded her email to accountants from Spectra's auditors, and asked them "to confirm . . . that these represent the position in the non-market making accounts in 2004 and 2005 for Managed Risk Trading and that these were the only accounts from Managed Risk Trading included in the track record calculation attached." The auditors subsequently confirmed that "[t]he Market Making Accounts were excluded from the performance statistics calculation." (TAC Exhibits 10 and 11.)

McBeth learned that the Defendants' statements about performance history were false in this regard for the first time when he obtained the aforementioned email chain in discovery. The specific facts that revealed the falseness of Defendants' statements—the exclusion of certain accounts managed by Managed Risk Trading in 2004 and 2005 from the calculation of performance history—were peculiarly within the defendants' knowledge and could not have

7

been discovered with the exercise of due diligence. Moreover, there was nothing in the Q4 2008 Presentation, the November 2008 Fact Sheet, the Q2 2010 Presentation, the June 2010 Fact Sheet, the auditors' documents that those documents referenced, or Porges' verbal statements about performance history that should reasonably have led McBeth to question whether all of the named entities' accounts were included in the calculation of performance history disclosed in those documents.

D.  <u>McBeth's Discovery That Defendants Engaged in Other Misconduct</u>

McBeth has also learned through discovery of other conduct by Defendants that constitutes an independent breach of contract, and further evidence of gross negligence and breach of fiduciary duty. Defendants have produced documents revealing that Porges transferred millions of dollars into the Fund—characterizing these repeated transfers as "capital contributions"—and withdrew money from the fund—characterizing these numerous transfers as "capital withdrawals." Porges never gave any notice in writing of such withdrawals, as required by Section 3.11 of the LLC Agreement. In addition, Defendants have indicated in response to discovery requests that Porges did not have a Book Capital Account or Tax Capital Account, as would have been required if he had actually made capital contributions pursuant to Section 3.5 of the LLC Agreement. It appears that these transfers of funds were not capital contributions at all, but were rather loans disguised as capital contributions that Porges and others made to the Fund. By characterizing these loans as capital contributions, Porges enabled the Fund to maintain leverage (and thereby be subject to risk) far beyond what would otherwise would have been permitted under the prime broker's rules.

8

E.   Communications with Defendants' Counsel Regarding Proposed Amendment

On July 26, 2016, following the discovery of the June 25 Email Chain, undersigned counsel brought the document to the attention of Defendants' counsel, and noted that the document seemed to support allegations that Defendants' repeated statements regarding performance history were false and misleading. Undersigned counsel requested that Defendants' counsel correct them if they were mistaken regarding the facts supported by the June 25 Email Chain. In a written response on August 2, 2016, Defendants' lead counsel acknowledged that certain accounts were indeed excluded from the calculation of the stated performance returns. His sole substantive response was to state that seeking leave to amend would be futile given the non-reliance provision in the Offering Papers. But he did not attempt to explain why this provision would apply to the performance information that Defendants provided to McBeth after he signed the Offering Papers. Defendants' counsel also did not agree to share with Plaintiff performance information for the accounts that were excluded.

## ARGUMENT

The Court should grant this motion for leave to amend consistent with Rule 15's directive that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). *See also* Fed. R. Civ. P. 15(a) (party may amend pleadings prior to trial with opposing party's written consent or court's leave). Granting leave to amend is within the discretion of this Court, *Reisner v. General Motors Corp.*, 511 F. Supp. 1167, 1171 (S.D.N.Y. 1981), and such leave is routinely granted when necessary to conform the complaint to reflect evidence obtained during discovery. *See In re Pfizer Inc. Secs. Litig.*, 2012 WL 983548, at *2 (S.D.N.Y. Mar. 22, 2012) (granting leave to amend to conform pleadings to evidence produced in fact discovery); *Kirk v.*

*Metropolitan Transp. Auth.*, 2001 WL 258605, at *17 (S.D.N.Y. Mar. 14, 2001) (granting leave to amend "to plead facts learned in discovery that support previously noticed causes of action").

Under the liberal standard of Rule 15, a motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile. *See Sanchez v. ASA Coll., Inc.*, 2015 WL 3540836, at *13 (S.D.N.Y. June 5, 2015) (Furman, J.) (granting leave to amend to allege fraud claims with particularity, after plaintiff had already had one opportunity to amend, because doing so would not be futile); *Agerbrink v. Model Serv. LLC*, 115 F. Supp. 3d 448 (S.D.N.Y. 2016). "Good cause" for purposes of seeking to file an amended complaint is demonstrated by showing diligence on behalf of a plaintiff. Because the proposed amendment at issue is based upon evidence that was not available to Plaintiff prior to discovery, the good cause standard is satisfied. *See New Yuen Fat Garments Factory Ltd. v. August Silk, Inc.*, 2009 WL 1515696, at * 3 (S.D.N.Y. June 1, 2009) (granting leave to amend to add a claim "based on evidence that was not available to [plaintiff] prior to discovery" notwithstanding untimeliness); *Estate of Ratcliffe v. Pradera Realty Co.*, 2007 WL 3084977, at *4 (S.D.N.Y. Oct. 19, 2007) (same).

I. **The TAC States Claims That Will Survive a Motion to Dismiss.**

The Court should grant this motion to amend because the TAC states claims for fraud, breach of fiduciary duty, and breach of contract that will survive a motion to dismiss. With regard to the Oct. 27, 2010 Email, which McBeth received *after* he signed the Offering Papers, there can be no genuine dispute that McBeth's claims will survive a motion to dismiss. Providing false and misleading performance information to McBeth so as to induce him to stay invested in the Spectra Fund clearly gives rise to fraud and breach of fiduciary duty claims. *See Sapirstein-*

10

*Stone-Weiss Foundation v. Merkin*, 950 F.Supp.2d 621, 627-28 (S.D.N.Y. 2013) (explaining that when fund managers choose to speak, they must "be both accurate and complete", and refusing to dismiss fraud and breach of fiduciary duty claims) (quoting *Caiola v. Citibank, N.A.*, 295 F.3d 312, 329 (2d Cir. 2002)). Defendants also cannot hide behind the disclaimer of reliance in the Offering Papers because it does not apply to misrepresentations and omissions made following McBeth's investment.

Likewise, to the extent that the TAC alleges that Porges made and withdrew "capital contributions" without complying with the provisions of the parties' agreements on such conduct, the TAC states a claim for breach of contract. And, to the extent that the TAC alleges that Defendants disguised Porges' loans as capital contributions to facilitate leveraged investments beyond what the prime broker permitted, the TAC alleges both a breach of the contractual provisions requiring that the Defendants comply with the prime broker agreement as well as a breach of fiduciary duty through grossly negligent handling of the funds under management. Such conduct is further a violation of the LLC Agreement (TAC Exhibit 12 at 27.) and the Offering Memorandum (TAC Exhibit 13 at 18.).

As for the pre-investment fraud claims, Defendants' almost certain reliance on the non-reliance provision in the Offering Papers of the TAC will be unavailing. *First*, the peculiar knowledge exception applies here because McBeth could not have uncovered Defendants' fraud on his own. "[E]ven where the parties have executed a specific disclaimer of reliance on [one party's] representations, [the other party] may not be precluded from claiming reliance on any . . . misrepresentations if the facts allegedly misrepresented are peculiarly within the [first party's] knowledge . . . ." *DIMON, Inc. v. Folium, Inc.*, 48 F.Supp.2d 359, 368 (S.D.N.Y. 1999) (quoting *Tahini Investments, Itd. v. Bobrowsky*, 99 A.D.2d 489, 470 N.Y.S.2d 431, 433 (2d Dep't 1984)).

11

*See also Patriot Exploration, LLC v. Sandridge Energy, Inc.*, 951 F.Supp.2d 331, 354 (D. Conn. 2013) (describing same principle and citing *DIMON*). Further, the Second Circuit, in its most recent pronouncement on the exception, held that the question of whether a defendant has peculiar knowledge that would defeat a disclaimer of reliance "is a matter of fact for the jury." *Koch v. Greenberg*, 626 Fed.Appx. 335, 338 (2d Cir. 2015) (summary order).

The fact that Spectra and Porges had secretly excluded certain accounts from the calculation of their reported performance history was entirely within the knowledge of the Defendants. It would have been impossible for McBeth to discover the truth on his own given that Managed Risk Trading was a private entity and its accounts were not public. Moreover, the materials that McBeth received specifically stated that all accounts of Managed Risk Trading had been included, giving McBeth no reason even to suspect a deception. McBeth's proposed fraud claim is thus similar to the claim found sufficient in *DIMON*, which was based upon "imbedded fraud in the very books and records and audited financial statements of the company to which [plaintiff] was given access." *DynCorp v. GTE Corp.*, 215 F.Supp.2d 308, 323 (S.D.N.Y. 2002) (distinguishing *DIMON*). It also resembles other cases in which courts have found that the facts revealing the existence of a misrepresentation were in the peculiar knowledge of one party, and therefore permitted claims against those parties despite the existence of disclaimers of reliance in the parties' agreements. *See, e.g.*, *Patriot Exploration*, 951 F.Supp.2d at 355 (finding plaintiffs' allegations supported conclusion that "it was within the peculiar knowledge of the defendants that their statements relied upon by the plaintiffs did not take into account the effects of plant shrink"); *Harding v. Naseman*, 2008 WL 4900562, at *9 (S.D.N.Y. Nov. 14, 2008) (fact that newly opened securities account and bank account were not included in defendant's disclosure of income was within peculiar knowledge of defendant); *Barkany Asset Recovery and Management*

12

*v. Southwest Securities Inc.*, 41 Misc.3d 673, 972 N.Y.S.2d 458, 466 (Sup. Ct. Kings Co. 2013) (finding that actual value of account used to secure loan was in peculiar knowledge of defendant).

That conclusion is fully consistent with the Court's March 21 Order. In the TAC, McBeth alleges that he could not have discovered this fraud with the exercise of due diligence, and alleges surrounding circumstances that make that assertion persuasive. In addition, the undisclosed exclusion of certain accounts from the calculation of performance history is precisely the type of "fact" to which the peculiar knowledge exception applies. (March 21 Order at 14, citing *LLBW Luxemburg S.A. v. Wells Fargo Sec. LLC*, 10 F.Supp. 3d 504, 518 (S.D.N.Y. 2014)). The Court's granting of this motion to amend thus in no way contradicts its prior ruling on McBeth's previously asserted misrepresentation claims.

*Second*, unlike the Second Amended Complaint, the TAC's fraud allegations against Porges individually fully comply with the particularity requirement of Rule 9(b). The TAC specifically identifies the false and misleading statements on which McBeth proposes to base his claims of fraud. And, in addition to alleging that Porges was individually responsible for the false and misleading statements contained in the written materials provided to McBeth, the TAC specifically alleges that Porges spoke with McBeth about his past investment performance, implicitly relying upon those same statements—which he knew to be false and misleading—as a means to induce McBeth to invest. The Court should find that these allegations are sufficient to satisfy McBeth's obligations with respect to pleading a fraud claim.

## II.    Filing the Proposed Third Amended Complaint Will Not Prejudice Defendants Or Require Significant Additional Expense.

There would be no prejudice to the Defendants if Plaintiff files the proposed TAC. The amendments do not require devoting considerable additional resources to discovery or

13

preparation for trial. The vast majority of necessary discovery on the new claims is covered by requests already made and responded to pursuant to the Second Amended Complaint and the active claims in this action in light of the March 21 Order.

To allow the proposed amendment also would not impose a substantial added expense on Defendants; they need only provide truthful performance statistics for the excluded Managed Risk Trading accounts and reveal the proportion of assets the excluded accounts represented with respect to the assets Porges managed during the period the strategy was implemented (2004 through 2005). There would also be no additional delay in the resolution of this lawsuit. Defendants took the party deposition of McBeth on Wednesday, August 10, 2016, after having been appraised of the issues raised and the additional discovery materials sought. Defendants' counsel was advised of Plaintiff's intention to oppose a further deposition of McBeth and was invited to ask questions of McBeth related to the newly discovered issue. The TAC will require only minimal additional discovery by Plaintiff. As such, Plaintiff does not believe that any extension of the discovery schedule, as amended by the court on July 27, 2016 (Dkt. No. 51), is necessary.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion for leave to file the TAC. A proposed order is submitted herewith.

Date:   August 19, 2016
        New York, New York

                                            Respectfully submitted:

                                            /s/  *L. Reid Skibell*
                                            L. Reid Skibell
                                            David B. Deitch
                                            S. Gabriel Hayes-Williams
                                            HARRIS, ST. LAURENT &
                                            CHAUDHRY LLP
                                            40 Wall Street, 53rd Floor
                                            New York, NY 10005

                                            *Attorneys for Plaintiff*