UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

DONALD F. MCBETH,                                 :
                                                  :
                        Plaintiff,                :
                                                  :
                   -against-                      :
                                                  :        No. 15-CV-2742 (JMF)
GREGORY I. PORGES, SPECTRA                         :
FINANCIAL GROUP LLC, AND SPECTRA                  :        ECF CASE
INVESTMENT GROUP LLC                              :
                                                  :
                        Defendants.               :        **ORAL ARGUMENT REQUESTED**
                                                  :
                                                  :
                                                  :
------------------------------------------------------------x
GREGORY I. PORGES, SPECTRA                         :
FINANCIAL GROUP LLC, AND SPECTRA                  :
INVESTMENT GROUP LLC,                             :
                                                  :
                   Counterclaim Plaintiffs,       :
                                                  :
                   -against-                      :
                                                  :
DONALD F. MCBETH                                   :
                                                  :
                   Counterclaim Defendant.        :
                                                  :
                                                  :
------------------------------------------------------------x


**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ ii

PRELIMINARY STATEMENT ......................................................................... 1

STANDARD OF REVIEW ............................................................................ 4

ARGUMENT .......................................................................................... 5

I.   THE COURT SHOULD DENY MCBETH'S MOTION TO ASSERT A NEW
     BREACH OF FIDUCIARY DUTY CLAIM .................................................. 5

     A.   McBeth Cannot Establish "Good Cause" and "Diligence" to Plead a New
          Breach of Fiduciary Duty Claim. ................................................. 6

     B.   McBeth's Request to Plead a New Breach of Fiduciary Duty Claim is
          Especially and Unduly Prejudicial. ............................................. 8

     C.   McBeth's Request to Assert a New Breach of Fiduciary Duty Claim is Futile. ...10

II.  THE COURT SHOULD DENY MCBETH'S MOTION TO SEEK RESCISSORY
     DAMAGES ON THE LOANS CLAIM .................................................... 11

     A.   McBeth Cannot Establish "Good Cause" and "Diligence" to Change His
          Remedy on the Loans Claim from Compensatory Damages to Rescissory
          Damages. ................................................................................ 11

     B.   Federal Rule of Civil Procedure 54(c) Does Not Excuse McBeth's Lack of
          Diligence Because Defendants Would Be Prejudiced. .......................... 13

     C.   McBeth's Request to Change His Remedy from Compensatory Damages to
          Rescissory Damages Amounts to Bad Faith. .................................... 18

III. THE COURT SHOULD DENY MCBETH'S MOTION TO REASSERT
     ALLEGATIONS THAT RELATE TO DISMISSED CLAIMS ....................... 19

CONCLUSION ........................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*,
   626 F.3d 699 (2d Cir. 2010)..................................................................5

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
   306 F. Supp. 3d 610 (S.D.N.Y. 2018) (Furman, J.)..................................4, 5, 7

*Albemarle Paper Co. v. Moody*,
   422 U.S. 405 (1975)..........................................................................14, 15

*Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*,
   760 F.2d 442 (2d Cir. 1985)..................................................................5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................10

*Assured Guar. Mun. Corp. v. UBS Real Estate Sec. Inc.*,
   2012 WL 5927379 (S.D.N.Y. Nov. 21, 2012)..............................................12

*Berrio v. City of New York*,
   2018 WL 2388537 (S.D.N.Y. May 9, 2018) ..............................................8

*Blagman v. Apple, Inc.*,
   307 F.R.D. 107 (S.D.N.Y. 2015) ............................................................18

*Block v. First Blood Assocs.*,
   988 F.2d 344 (2d Cir. 1993)..................................................................8, 9, 15

*Bridgeway Corp. v. Citibank, N.A.*,
   2003 WL 402790 (S.D.N.Y. Feb. 20, 2003)..............................................16

*BPP Illinois, LLC v. Royal Bank of Scotland Grp. PLC*,
   859 F.3d 188 (2d Cir. 2017) ................................................................4

*Citigroup Inc. v. VDN Sys., Inc.*,
   2008 WL 5274091 (S.D.N.Y. Dec. 16, 2008) ............................................12

*E.I. Du Pont De Nemours & Co. v. HEM Research, Inc.*,
   1989 WL 122053 (Del. Ch. Oct. 13, 1989) ..............................................12

*G.L.M. Sec. & Sounds Inc. v. LoJack Corp.*,
   2014 WL 4675854 (S.D.N.Y. Sept. 14, 2014)............................................8

*G.L.M. Sec. & Sounds, Inc v. LoJack Corp.*,
   667 F. App'x 339 (2d Cir. 2016) ............................................................5, 8

*Grochowski v. Phoenix Const.*
  318 F.3d 80 (2d Cir. 2003)........................................................................................4

*Gullo v. City of New York,*
  540 F. App'x 45 (2d Cir. 2013) .............................................................................7

*Harris v. Finch, Pruyn & Co.,*
  2008 WL 4155638 (N.D.N.Y. Aug. 26, 2008) .....................................................12

*Huber v. Nat'l R.R. Passenger Corp.*,
  2012 WL 6082385 (S.D.N.Y. Dec. 4, 2012) .......................................................10

*Jaffer v. Hirji,*
  887 F.3d 111 (2d Cir. 2018) ................................................................................10

*Kirlin v. Conopco, Inc.*,
  1996 WL 263026 (S.D.N.Y. May 16, 1996) ........................................................16

*Krumme v. Westpoint Stevens Inc.*,
  143 F.3d 71 (2d Cir. 1998).................................................................................5, 8

*MASTR Adjustable Rate Mortgs. Tr. 2006-OA2 v. UBS Real Estate Sec. Inc.*,
  2015 WL 764665 (S.D.N.Y. Jan. 9, 2015) .....................................................12, 13

*N.Y. Immigration Coal. v. U.S. Dep't of Commerce,*
  2018 WL 4292673 (S.D.N.Y. Sept. 7, 2018) (Furman, J.) ...................................10

*Parker v. Columbia Pictures Indus.*,
  204 F.3d 326 (2d Cir. 2000)..................................................................................4

*Pereira v. Farace,*
  413 F.3d 330 (2d Cir. 2005)................................................................................11

*Pkfinans Int'l Corp. v. IBJ Schroeder Leasing Corp.*,
  1996 WL 84481 (S.D.N.Y. Feb. 27, 1996)...........................................................16

*Ravenswood Inv. Co., L.P. v. Estate of Winmill,*
  2018 WL 1410860 (Del. Ch. Mar. 21, 2018)......................................................12

*Ross v. Global Bus. School, Inc.,*
  2001 WL 1006656 (S.D.N.Y. Aug. 30, 2001).......................................................16

*Royal Am. Managers, Inc. v. IRC Holding Corp.*,
  885 F.2d 1011 (2d Cir. 1989) ........................................................................12, 15

*Ruotolo v. City of New York,*
  514 F.3d 184 (2d Cir. 2008)...........................................................................5, 8, 9

*Scarangella v. Grp. Health Inc.*,
2009 WL 764454 (S.D.N.Y. Mar. 24, 2009) ...........................................................12

*Schultz v. Ginsburg*,
965 A.2d 661 (Del. 2009) ......................................................................................12

*Slifer v. CG Technology, L.P.*,
2017 WL 3106438 (S.D.N.Y. June 13, 2017) .......................................................14

*In re Signature Apparel Grp. LLC*,
577 B.R. 54 (Bankr. S.D.N.Y. 2017) ....................................................................12

*Smith v. Westchester Cty Dep't of Corrections*,
2014 WL 4384104 (S.D.N.Y. Sept. 3, 2014) ......................................................9, 15

*Soley v. Wasserman*,
2013 WL 1655989 (S.D.N.Y. Apr. 17, 2013) .......................................................11

*TechnoMarine SA v. Giftports, Inc.*,
758 F.3d 493 (2d Cir. 2014) ....................................................................................5

*Universal Enter. Grp. LP v. Duncan Petroleum Corp.*,
2013 WL 3353743 (Del. Ch. July 1, 2013) ...........................................................13

*Werking v. Andrews*,
526 F. App'x 94 (2d Cir. 2013) ............................................................................5, 8

*Youngsbloods v. BMG Music*,
2011 WL 43510 (S.D.N.Y. Jan. 6, 2011) ..............................................................18

*Yu v. GSM Nation LLC*,
2018 WL 2272708 (Del. Super. Ct. Apr. 24, 2018) ..............................................17


**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ....................................................................................................10

Fed. R. Civ. P. 15 ..............................................................................................4, 5, 8, 16

Fed. R. Civ. P. 16(b) ......................................................................................................4, 7

Fed. R. Civ. P. 54(c) ...........................................................................................13, 14, 15

Fed. R. Civ. P. 56 ............................................................................................................10

Defendants Gregory I. Porges, Spectra Financial Group LLC, and Spectra Investment Group LLC respectfully submit this memorandum of law in opposition to Plaintiff Donald F. McBeth's motion for leave to file a Fourth Amended Complaint.  For the reasons set forth below, McBeth's motion should be denied.

## PRELIMINARY STATEMENT

McBeth is seeking to file his *sixth complaint*[1] – after the Court issued two orders generally barring further amendments, after the parties completed fact discovery, after the Court already allowed McBeth to file an earlier post-discovery motion to amend, after the Court's summary judgment ruling, after the parties completed expert discovery, after the parties filed their joint pretrial order and motions *in limine*, and on the eve of trial.

McBeth cannot possibly demonstrate that he acted with diligence in bringing this motion – and he does not even try.  There was absolutely nothing preventing McBeth from seeking the Court's leave to assert a new breach of fiduciary duty claim based on "the repayment of certain expenses" and pursue the equitable remedy of rescissory damages when he filed his first post-discovery motion to amend in November 2016.  As explained below, the Court was exceedingly accommodating of McBeth's request to bring a revised motion for leave to file a Third Amended Complaint so that McBeth could incorporate any information he acquired in discovery into his operative complaint.  Indeed, McBeth effectively concedes that he possessed the information relating to the supposed repayment of expenses nearly two years ago when it was produced in fact discovery, but he simply did not see it.

---

[1]      (*See* (1) Complaint, dated Apr. 8, 2015 ("Compl."), ECF No. 1; (2) Amended Complaint, dated Apr. 27, 2015 ("Am. Compl."), ECF No. 8; (3) Second Amended Complaint, dated June 24, 2015 ("SAC"), ECF No. 18; (4) Third Amended Complaint, dated Aug. 19, 2016, ECF No. 52-1; (5) Revised Third Amended Complaint, dated Nov. 29, 2016 ("RTAC"), ECF No. 101-1 (refiled as the operative Third Amended Complaint, dated Mar. 27, 2018 ("TAC"), ECF No. 149); and finally (6) Fourth Amended Complaint, dated Sept. 5, 2018 ("FAC"), ECF No. 200-1.)

Furthermore, McBeth's suggestion that Defendants would not be prejudiced by a Fourth Amended Complaint is borderline frivolous.  If the Court were to permit this amendment, it would result in substantial prejudice to Defendants, drive up the costs of this litigation materially, and significantly delay the resolution of the case.  Regarding McBeth's new breach of fiduciary duty theory, the Court would have to reopen discovery, the parties would have to amend their expert reports, and Defendants would have to move for summary judgment on the newly asserted claim.  If the Court were to deny Defendants' motion for summary judgment, Defendants would have to redo their pretrial submissions – jury instructions, verdict forms, exhibit lists – to reflect the addition of this new claim.  Regarding McBeth's eleventh hour request for rescissory damages – after he explicitly sought compensatory damages when seeking leave to file his Third Amended Complaint – the Court would have to rule on Defendants' motion to bifurcate the case, potentially have separate proceedings on McBeth's legal and equitable claims, and determine whether to accept McBeth's proposal for a Federal Rule of Civil Procedure 39 advisory ruling, which Defendants will oppose.

The Court should put a stop to this.  The Court permitted McBeth to advance two discrete liability theories at trial – (1) fraudulent and/or negligent misrepresentation claims predicated on the Spectra Opportunities Fund's (the "Spectra Fund") historical performance statistics (the "Performance Statistics Claim"), and (2) breach of fiduciary duty and/or breach of contract claims based on the Spectra Fund's use of loans that McBeth has alleged were disguised capital contributions (the "Loans Claim").  Those are McBeth's theories, and the Court should limit McBeth to those theories at trial.  The Court should not permit McBeth to add a new claim about the "repayment of certain expenses" which he could have sought leave to plead in his previous motion nearly two years ago; change his damages theory on the Loans Claim from

compensatory damages to rescissory damages in a manner that will dramatically affect how this case proceeds going forward and significantly prejudice Defendants; and reassert countless allegations relating to claims that the Court already has dismissed.

In any commercial litigation, the plaintiff's theories eventually must be fixed permanently so that the defendant can understand what exactly it needs to defend against at trial. The parties are well beyond that point.  Throughout this litigation, McBeth has responded to the Court's dismissal of his claims by constantly changing his theories in order to stay alive. McBeth's current motion is an admission that – as the Court cautioned McBeth after its summary judgment ruling – "[t]here are reasons, fairly substantial arguments that the defendants have that, some of which I referenced in my ruling, and in that regard, going to trial you may get nothing[.]"[2]  McBeth recognizes that he has potentially insurmountable evidentiary problems on the Performance Statistics Claim and the Loans Claim, and that – even if he is correct that the loans to the Spectra Fund were disguised capital contributions – he would only be entitled to *de minimis* damages.  McBeth also knows that he now has personal financial exposure on the Performance Statistics Claim in light of Defendants' counterclaim.  As a result, McBeth is trying to change his theory of the case yet again – based on information that he has had in his possession for nearly two years – to introduce a new claim that has never been the subject of any meaningful discovery, transform his damages theory to suddenly seek equitable relief on the eve of trial, and rebrand allegations concerning dismissed claims to make them appear relevant to his theories that survived summary judgment.

The Court should deny McBeth's motion because he cannot establish that he has acted diligently under Federal Rule of Civil Procedure 16 and there is good reason to deny the

---

[2]  (March 9, 2018 Transcript, ECF No. 167-3 ("3/9/18 Tr.") at 20:6-9.)

motion under Federal Rule of Civil Procedure 15 – namely, prejudice to Defendants, futility, bad faith, and undue delay.

## STANDARD OF REVIEW

Given that the Court already has entered a scheduling order barring any further amended complaints absent good cause,[3] Federal Rules of Civil Procedure 16(b) and 15(a) provide the applicable standards of review on McBeth's motion. *See Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003) ("Where a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'"); *see also Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 306 F. Supp. 3d 610, 626 (S.D.N.Y. 2018) (Furman, J.) ("Rule 15 is not the only applicable Rule in this case: Because the Court set a deadline for '[a]ny motion to amend or join additional parties,' … and Plaintiffs' request was filed several months after that deadline, they must also show 'good cause' under Rule 16(b)(4).").

As the Second Circuit has made clear, "[b]y limiting the time for amendments, [Rule 16(b)] is designed to offer a measure of certainty in pretrial proceedings, ensuring that 'at some point both the parties and the pleadings will be fixed.'" *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). Under Rule 16(b), the party seeking to amend must "establish good cause," and it is well-settled that "a finding of 'good cause' depends on the diligence of the moving party." *Id.*; *see also BPP Illinois, LLC v. Royal Bank of Scotland Grp. PLC*, 859 F.3d 188, 195 (2d Cir. 2017) ("'Whether good cause exists turns on the diligence of the moving party.'"). "'Specifically, the moving party must demonstrate that it has been diligent in its efforts to meet the Court's deadlines, and that despite its having exercised diligence, the

---

[3]      (*See* Order, dated April 21, 2016, ECF No. 38, at ¶ 4.)

applicable deadline could not have reasonably been met.'" *Alaska Elec. Pension Fund*, 306 F. Supp. 3d at 626.  Importantly, "'[a] party fails to show good cause when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline.'" *Id.*

Under a Rule 15(a) analysis, "[l]eave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014); *see also Alaska Elec. Pension Fund*, 306 F. Supp. 3d at 626 ("A district court … 'has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'").  The Second Circuit has noted that "prejudice to the opposing party" is "'the most important factor' and 'the most frequent reason for denying leave to amend.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008).  "Undue prejudice arises when an 'amendment [comes] on the eve of trial and would result in new problems of proof.'" *Id.*  The Second Circuit repeatedly has emphasized that amendments are "especially prejudicial" when the parties have completed discovery and defendants have filed motions for summary judgment.  *See, e.g.*, *G.L.M. Sec. & Sound, Inc v. LoJack Corp.*, 667 F. App'x 339, 341 (2d Cir. 2016); *Werking v. Andrews*, 526 F. App'x 94, 95 (2d Cir. 2013); *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726-27 (2d Cir. 2010); *Krumme v. Westpoint Stevens Inc.*, 143 F.3d 71, 88 (2d Cir. 1998); *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985).

## ARGUMENT

## I.   THE COURT SHOULD DENY MCBETH'S MOTION TO ASSERT A NEW BREACH OF FIDUCIARY DUTY CLAIM

McBeth is seeking to file a Fourth Amended Complaint in order to assert a new breach of fiduciary duty theory based on the Spectra Fund's "repayment of certain expenses" to

related parties of the Spectra Fund.  (Plaintiff's Motion for Leave to File a Fourth Amended

Complaint, dated Sept. 5, 2018, ECF No. 200 ("Pl. Br."), at ¶¶ 1, 2.)  The Court should reject

McBeth's request to assert this claim in a Fourth Amended Complaint because he did not act

with any diligence, and the proposed claim is unduly prejudicial and futile.

### A.   McBeth Cannot Establish "Good Cause" and "Diligence" to Plead a New Breach of Fiduciary Duty Claim.

In order to understand why McBeth's request to file a new breach of fiduciary

duty claim based on the "repayment of certain expenses" is so objectionable, some procedural

context is necessary.  On March 21, 2016, the Court granted in part and denied in part

Defendants' motion to dismiss the Second Amended Complaint.  (*See* Opinion and Order, dated

Mar. 21, 2016, ECF No. 33 ("3/21/16 Op.").)  In that decision, the Court also held that McBeth

could not amend his complaint further.  (*Id.* at 26-28.)  On April 21, 2016, the Court entered a

Civil Case Management Plan and Scheduling Order, which barred McBeth from filing amended

complaints absent a showing of "good cause."  (*See* Civil Case Management Plan and

Scheduling Order, dated Apr. 21, 2016, ECF No. 38, ¶ 4.)

On August 19, 2016, McBeth filed a motion seeking leave to file a Third

Amended Complaint.  (*See* Motion for Leave to File Third Amended Complaint, dated Aug. 19,

2016, ECF No. 52.)  On November 3, 2016, while McBeth's motion was pending, the parties

appeared before the Court for a pretrial conference.  At the pretrial conference, McBeth

expressed the desire to submit "*new pleadings … in a week, really almost immediately, and that

would be the pleadings that would be dealt with on summary judgment.*"  (Griffin 9/12/18 Decl.,[4]

Ex. 1 ("11/3/16 Tr.") at 4:18-20 (emphasis added).)  The Court allowed McBeth to revise his

proposed Third Amended Complaint to incorporate any new evidence as to claims that were not

---

[4]     The "Griffin 9/12/18 Decl." refers to the Declaration of Robert E. Griffin in Opposition to Plaintiff's Motion for Leave to File a Fourth Amended Complaint.

currently in the case.  (*Id.* at 14:14-21, 16:1-7.)[5]  Put differently, the Court bent over backwards

to give McBeth another opportunity to ensure that his proposed Third Amended Complaint

reflected any new information that McBeth gathered in discovery.  Nearly one month later, on

November 29, 2016, McBeth filed his renewed motion to assert his Revised Third Amended

Complaint.  (*See* Motion for Leave to File a Third Amended Complaint (Renewed Motion),

dated Nov. 29, 2016, ECF No. 100; *see also* RTAC, dated Nov. 29, 2016, ECF No. 101-1.)

    In light of that history, McBeth cannot possibly establish the requisite "diligence"

to plead a claim based on the "repayment of certain expenses" at this late stage, and he does not

argue otherwise.[6]  McBeth does not identify the basis for his allegation in his motion, but he

presumably learned it from a document produced before the close of fact discovery on November

1, 2016.  (*See* Stipulation and Order to Modify Civil Case Management Plan and Scheduling

Order, dated Oct. 21, 2016, ECF No. 83 (setting deadline for fact discovery).)  In fact, McBeth

conceded in his opposition to Defendants' motions *in limine* that "'[i]n the course of preparing

for trial, Plaintiff discovered two repayments of undocumented expenses,'" and McBeth did not

find the information sooner because it "was buried among voluminous accounting spreadsheets."

(Memorandum of Law in Opposition to Defendants' Motions *In Limine*, dated Aug. 29, 2018

("MIL Opp."), ECF No. 198, at 1.)  McBeth is therefore asking the Court to excuse his

---

[5]     The Court told the parties:  "My question is, what if we essentially allow further supplementation of the motion for leave to amend for whatever even newer evidence Mr. Skibell thinks he has, but I don't decide that motion until the summary judgment stage, at which point, again, I have more flexibility … with respect to whether I can grant leave to amend and then dismiss on summary judgment … ."  (*Id.* at 14:14-21.)  The Court continued: "[I]f I were to defer deciding the motion for leave to amend until summary judgment motions were briefed, I think if the plaintiff was given an opportunity to submit whatever evidence he has, even as to the claims that are not technically yet in the case, I think I could grant the leave to amend and then dismiss them on summary judgment if I agree with your arguments. …"  (*Id.* at 16:1-7.)

[6]     McBeth does not try to satisfy Rule 16(b)'s "diligence" standard in his motion papers.  McBeth's arguments are instead predicated on notions of "prejudice" and "liberality" (*see* Pl. Br. at ¶¶ 3-4) – concepts that, as this Court has found, are irrelevant if the plaintiff cannot show that it has acted with "diligence" under Rule 16.  *See Alaska Elec. Pension Fund*, 306 F. Supp. 3d at 627 n.8 (explaining that, in light of the plaintiff's inability to show that it acted diligently, it was "immaterial" as to whether the defendants "could establish prejudice"); *see also Gullo v. City of New York*, 540 F. App'x 45, 47 (2d Cir. 2013) (summary order) ("That defendants suffered no prejudice does not change the fact that plaintiffs failed to pursue amendment with diligence.").

carelessness during fact discovery and permit him – almost two years after his first post-discovery motion to amend – to have another bite at the apple. McBeth's failure to incorporate this theory in his Revised Third Amended Complaint on November 29, 2016 is inexcusable, and the Court should reject his arguments based entirely on his lack of diligence.[7]

### B. McBeth's Request to Plead a New Breach of Fiduciary Duty Claim is Especially and Unduly Prejudicial.

Defendants would also suffer prejudice if McBeth were permitted to assert a breach of fiduciary duty theory based on the "repayment of certain expenses." The Second Circuit has repeatedly held that "'[a] proposed amendment is especially prejudicial when discovery had already been completed and [the] non-movant had already filed a motion for summary judgment.'" *G.L.M. Sec. & Sounds*, 667 F. App'x at 341 (quoting *Krumme*, 143 F.3d at 88); *see also Werking*, 526 F. App'x at 96 ("We are particularly likely to find prejudice where the parties have already completed discovery and the defendant has moved for summary judgment."). Relatedly, proposed amendments cause "undue prejudice" when they are sought "'on the eve of trial and would result in new problems of proof.'" *Ruotolo*, 514 F.3d at 192. In this case, fact discovery was completed nearly two years ago, the Court issued a summary judgment ruling approximately six months ago, expert discovery was finished three months ago, and the parties are currently preparing for an upcoming trial. Clearly, Defendants would be

---

[7] For the same reason, even under a Rule 15 analysis, the Court should reject McBeth's request to plead a new breach of fiduciary duty claim based on the "repayment of certain expenses" on the ground of undue delay. "The court may deny leave to amend the pleadings 'where [a] motion is made after an inordinate delay, no satisfactory explanation is offered for the delay and the amendment would prejudice other parties." *Berrio v. City of New York*, 2018 WL 2388537, at *4 (S.D.N.Y. May 9, 2018). "Of course, 'the longer the period of unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.'" *Id.* (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). McBeth delayed seeking leave to file this motion for nearly two years after the close of fact discovery, he did not incorporate this theory into his first motion for leave to amend in November 2016, and only brought this motion after the Court had ruled on Defendants' motion for summary judgment. This undue delay – coupled with the clear prejudice to Defendants (*see infra*) – provides the Court with another basis to deny the motion. *See, e.g., G.L.M. Sec. & Sounds Inc. v. LoJack Corp.*, 2014 WL 4675854, at *14 (S.D.N.Y. 2014) ("Even if [plaintiff's] motion was based on new evidence, it should have noticed its motion for leave to amend shortly after the close of discovery, not after reading LoJack's summary judgment papers and deciding it had a better theory for its case.").

prejudiced if the Court were to permit McBeth to assert an entirely new breach of fiduciary duty theory at such a late stage of the case.

Further, McBeth's argument that Defendants would not suffer prejudice because "[t]here is no further discovery that Defendants need to take relating to these facts, and Mr. McBeth is not requesting that discovery be reopened to permit him to explore these allegations" (Pl. Br. at ¶ 3) is baseless.[8]  Defendants would suffer prejudice because they would be forced "'to expend additional resources to conduct discovery and prepare for trial'" and the new claim would "'significantly delay the resolution of this dispute.'"  *Smith v. Westchester Cty Dep't of Corrections*, 2014 WL 4384104, at *10 (S.D.N.Y. Sept. 3, 2014) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)); *see also Ruotolo*, 514 F.3d at 192 (recognizing that an "amendment is prejudicial when it 'substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation'").

Contrary to McBeth's insinuation, this claim has never been the subject of any meaningful discovery.  If the Court were to permit McBeth to plead this claim, the parties would need to take discovery on why those expenses were originally incurred, whether they were, in fact, repaid to other Spectra entities, and the propriety of expense repayments.  Defendants' hedge fund accounting expert would need to amend his expert report to address McBeth's new theory, which presumably would cause McBeth to submit a rebuttal report.  After discovery,

---

[8]     The idea that McBeth will not seek to reopen discovery on this claim cannot be taken seriously.  When McBeth sought leave to file the Third Amended Complaint, he told the Court that "[t]here would be no prejudice to Defendants if Plaintiff files the proposed RTAC.  Discovery in this case is complete, and the scope of discovery has included the issues that are addressed in the allegations of the RTAC."  (Plaintiff Donald F. McBeth's Memorandum of Law in Support of Renewed Motion for Leave to File an Amended Complaint, dated Nov. 29, 2016, ECF No. 101, at 14.)  On September 11, 2018, McBeth submitted a letter to the Court backtracking on that assertion and essentially asking the Court to reopen discovery on issues relating to Spectra Group.  (Sept. 11, 2018 Letter, ECF No. 202, at 4.)  Defendants will respond to the false and misleading allegations in McBeth's September 11, 2018 letter as soon as possible.  But suffice it to say, if the Court were to permit McBeth to assert a new breach of fiduciary duty claim, Defendants are highly confident that McBeth would try to obtain new discovery.

Defendants would move for summary judgment on this claim.  The Court would then need time

to rule on the summary judgment motion.  If the Court were to deny that motion, Defendants

would have to modify their jury instructions, special verdict form, and exhibit list to reflect the

addition of this newly asserted breach of fiduciary duty claim.  The entire process would be

incredibly prejudicial because it would force Defendants to "expend additional resources" and

"significantly delay the resolution of this dispute."

### C.   McBeth's Request to Assert a New Breach of Fiduciary Duty Claim is Futile.

The Court should deny McBeth's request to plead his new breach of fiduciary

duty claim based on the "repayment of certain expenses" because it is futile – regardless of

whether futility is evaluated under Rule 12(b)(6) or Rule 56.[9]  Under a Rule 12(b)(6) analysis,

McBeth's allegation is "an unadorned, the-defendant-unlawfully-harmed-me accusation" and a

"'naked assertion[] devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009).  Under a Rule 56 analysis, McBeth has "a lack of evidence to go to the trier of fact

on an essential element" of his newly asserted claim.  *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir.

2018).  McBeth's sole allegation is that he "'discovered two repayments of undocumented

expenses, totaling almost $500,000, that were sent to Porges-affiliated entities after the Fund had

ceased trading and incurring expenses, and in the same group of transactions that form the basis

for [the Loan Claims]."  (Pl. Br. at ¶ 2.)  McBeth does not plausibly allege that it was a breach of

fiduciary duty for the Spectra Fund to repay expenses to "Porges-affiliated entities," and he does

not have any evidence demonstrating why it was a breach.

---

[9]      As a general rule, "'[l]eave to amend will be denied as futile only if the proposed new claim cannot
withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim.'"  *N.Y. Immigration Coal. v. U.S. Dep't of
Commerce*, 2018 WL 4292673, at *1 (S.D.N.Y. Sept. 7, 2018) (Furman, J.).  However, post-discovery motions to
amend are "evaluated under the same standards for summary judgment."  (3/9/18 Op. at 8:3-4 (citing *Huber v. Nat'l
R.R. Passenger Corp.*, 2012 WL 6082385, at *5 (S.D.N.Y. Dec. 4, 2012).)

## II.    THE COURT SHOULD DENY MCBETH'S MOTION TO SEEK RESCISSORY DAMAGES ON THE LOANS CLAIM

McBeth is also seeking the Court's leave to add "a claim for rescissory damages for Mr. McBeth's breach of fiduciary duty claim."  (Pl. Br. at ¶ 1.)  The Court should deny McBeth's request to change his remedy on the Loans Claim on the eve of trial because he failed to act with any diligence, permitting McBeth to seek rescissory damages will drastically change the complexion of the case and significantly prejudice Defendants, and McBeth's eleventh hour request was plainly brought in bad faith.

### A.    McBeth Cannot Establish "Good Cause" and "Diligence" to Change His Remedy on the Loans Claim from Compensatory Damages to Rescissory Damages.

McBeth has exercised even less diligence with regard to his request for rescissory damages than he did with respect to his newly asserted "expenses" claim.  McBeth has been seeking compensatory damages, as opposed to rescissory damages, on breach of fiduciary duty claims since the outset of the case.  (*See* Compl., ECF No. 1, at ¶¶ 84, 91(a).)  McBeth's repeated requests for compensatory damages on his fiduciary duty claims were no accident – in each version of his complaint, McBeth also demanded a jury trial.[10]

McBeth only has a jury trial right on fiduciary duty claims because he has been specifically seeking compensatory damages – a legal remedy.  *See, e.g.*, *Pereira v. Farace*, 413 F.3d 330, 337-41 (2d Cir. 2005); *Soley v. Wasserman*, 2013 WL 1655989, at *2 (S.D.N.Y. Apr. 17, 2013) ("In *Pereira*, although first noting that breach of fiduciary duty claims were historically equitable, the Second Circuit concluded that the particular breach of fiduciary claim at issue was legal in nature because it sought compensatory damages.").  If McBeth had sought rescissory damages on his breach of fiduciary duty claims, he would have lacked a jury trial right

---

[10]      (*See* Compl., ECF No. 1, at p. 24; Am. Compl., ECF No. 8, at p. 25; SAC, ECF No. 18, at p. 30; Third Amended Complaint, ECF No. 52-1, at p. 35; RTAC, ECF No. 100-1, at p. 38; TAC, ECF No. 149, at p. 38.)

because rescissory damages are equitable.  *See, e.g.*, *Royal Am. Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1019 n.4 (2d Cir. 1989) ("An equitable claim such as rescission is for the court, not the jury, to decide."); *Citigroup Inc. v. VDN Sys., Inc.*, 2008 WL 5274091, at *2 (S.D.N.Y. Dec. 16, 2008) (recognizing that actions seeking "'rescission … of a contract'" are "'equitable in nature, and do not give rise to a Seventh Amendment jury trial right'") (brackets omitted); *In re Signature Apparel Group LLC*, 577 B.R. 54, 109 (Bankr. S.D.N.Y. 2017) (explaining that "[u]nder Delaware law, the court 'has broad latitude to exercise its equitable powers to craft a remedy' for breach of fiduciary duty," including "'rescissory damages'"); *MASTR Adjustable Rate Mortgs. Tr. 2006-OA2 v. UBS Real Estate Sec. Inc.*, 2015 WL 764665, at *18 (S.D.N.Y. Jan. 9, 2015) ("Rescissory damages are a 'very rarely used equitable tool.'"); *Assured Guar. Mun. Corp. v. UBS Real Estate Sec. Inc.*, 2012 WL 5927379, at *3 (S.D.N.Y. Nov. 21, 2012) ("Rescissory damages are an alternative form of equitable relief when rescission is impracticable[.]").[11]

> To the extent McBeth wanted rescissory damages rather than compensatory damages, he should have asked for rescissory damages on November 29, 2016 when he sought

---

[11]     McBeth cites a handful of inapposite cases in his opposition to Defendants' motions *in limine* for the proposition that he has a right to a jury trial even if he seeks rescissory damages. (*See* MIL Opp., ECF No. 198, at 6-7.)  The Delaware Supreme Court has made clear, however, that "[o]rdering rescission or awarding rescissory damages are forms of equitable relief."  *Schultz v. Ginsburg*, 965 A.2d 661, 669 (Del. 2009).  McBeth cites two Chancery Court cases – *E.I. Du Pont De Nemours & Co. v. HEM Research, Inc.*, 1989 WL 122053, at *3 (Del. Ch. Oct. 13, 1989) and *Ravenswood Inv. Co., L.P. v. Estate of Winmill*, 2018 WL 1410860, at *21 (Del. Ch. Mar. 21, 2018) – that stand for the proposition that, in breach of contract disputes, certain rescission awards are legal when a court "restor[es] plaintiff to his original condition by awarding money or other property of which he had been deprived."  *E.I. Du Pont*, 1989 WL 122053, at *3.  But critically, the same cases recognize that rescission is equitable when a court "cause[s] an instrument, document, obligation or other matter affecting plaintiff's rights and/or liabilities to be set aside and annulled."  *Id.*  Even under the logic of McBeth's cases, he would still be seeking equitable relief because McBeth's Loans Claim does not allege that he has been "deprived" of money or property – he is instead asking the Court to "set aside and annul[]" his entire investment in the Spectra Fund as of January 2011 and grant him the monetary equivalent of that annulment.  Further, McBeth's federal cases do not examine whether a party seeking rescission or rescissory damages in federal court has a Seventh Amendment jury trial right.  *See Scarangella v. Grp. Health Inc.*, 2009 WL 764454, at *17-18 (S.D.N.Y. Mar. 24, 2009) (considering whether rescission is equitable and appropriate under ERISA); *Harris v. Finch, Pruyn & Co., Inc.*, 2008 WL 4155638, at *6 (N.D.N.Y. Aug. 26, 2008) (reviewing Circuit authority as to whether back pay and lost benefits are equitable under ERISA).

leave to file the Revised Third Amended Complaint.  But rather than plead rescissory damages on the Loans Claim when seeking the Court's leave to assert it, McBeth continued to seek compensatory damages and assert his right to a jury trial.  (RTAC, ECF No. 101-1, at ¶ 129(a) & p. 38.)  McBeth even continued to seek compensatory damages when he filed his operative Third Amended Complaint after the Court permitted him to assert the Loans Claim.  (TAC, ECF No. 149, at ¶ 129(a) & p. 38.)  Given McBeth's lack of diligence, the Court should reject McBeth's effort to change his remedy at such a late date – especially since permitting rescissory damages will materially affect how this case proceeds going forward and significantly prejudice Defendants.  (*See* pp. 15-18, *infra*.)

**B.     Federal Rule of Civil Procedure 54(c) Does Not Excuse McBeth's Lack of Diligence Because Defendants Would Be Prejudiced.**

McBeth does not contend that he acted diligently in seeking rescissory damages on the Loans Claim.  Instead, McBeth effectively asks the Court to overlook his lack of diligence by contending that Federal Rule of Civil Procedure 54(c) "directs that the Court 'should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.'"  (Pl. Br. at ¶ 5 (quoting Fed. R. Civ. P 54(c).)  In other words, McBeth is essentially contending that the Court should allow McBeth to change his remedy on the Loans Claim from compensatory damages to rescissory damages – a remedy that has been recognized as extraordinarily rare[12] – because Rule 54(c) never required McBeth to identify any particular form of damages in the first instance.

---

[12]     *See, e.g.*, *Universal Enter. Grp. LP v. Duncan Petroleum Corp.*, 2013 WL 3353743, at *16 (Del. Ch. July 1, 2013) (explaining that rescissory damages "are the exception to the normal out-of-pocket measure' of compensatory damages," which "Delaware courts have been 'extremely reluctant' to award"); *see also MASTR Adjustable Rate Mortgs. Tr. 2006-OA2*, 2015 WL 764665, at *18 ("Rescissory damages are a 'very rarely used equitable tool.'").

Not only is this argument at odds with the requirement that plaintiffs must plead rescission,[13] McBeth's Rule 54(c) argument ignores *Albemarle Paper Company v. Moody*, 422 U.S. 405 (1975), in which the Supreme Court recognized that Rule 54(c) does not permit a plaintiff to change its remedy late in a case when it would improperly and substantially prejudice the defendant.  In *Albemarle Paper*, the plaintiffs brought a Title VII class action seeking injunctive relief rather than monetary damages.  *Id.* at 408-09.  After years of discovery, the plaintiffs moved to add a demand for back pay.  *Id.* at 409.  The district court refused to award back pay after trial because, in relevant part, "'[t]he plaintiffs' claim for back pay was filed nearly five years after the institution of this action,'" "'[i]t was not prayed for in the pleadings,'" "'it is apparent that the defendants would be substantially prejudiced by the granting of such affirmative relief,'" and "'[t]he defendants might have chosen to exercise unusual zeal in having this court determine their rights at an earlier date had they known that back pay would be at issue.'"  *Id.* at 410.  The Fourth Circuit reversed, and the Supreme Court granted certiorari.  *Id.* at 411, 413.

The Supreme Court held that the district court had discretion to refuse to award back pay – notwithstanding Federal Rule of Civil Procedure 54(c) – to the extent the defendants had been prejudiced by plaintiff's delayed request.  The Supreme Court recognized Rule 54(c)'s direction that "'every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.'"  *Albemarle Paper*, 422 U.S. at 424.  The Supreme Court explained, however, that "a party may not be 'entitled' to relief if its conduct of the cause has improperly and substantially prejudiced the other party."  *Id.*  The Supreme Court reasoned that, in the proceedings before the district court,

---

[13]     *See Slifer v. CG Technology, L.P.*, 2017 WL 3106438, at *8 (S.D.N.Y. June 13, 2017) ("Plaintiff's request for rescission is also denied.  Plaintiff did not plead rescission as a cause of action and thus cannot seek it now.").

the plaintiffs "were not merely tardy, but also inconsistent, in demanding backpay." *Id.* at 424. Indeed, the plaintiffs in *Albemarle Paper* had "assured the court that the suit involved no claim for any monetary awards on a class basis." *Id.* at 409.

        *Albemarle Paper* makes clear that Rule 54(c) does not give McBeth the right to change his remedy on the eve of trial when it would "improperly and substantially prejudice" Defendants – particularly since McBeth's request is "not merely tardy, but also inconsistent" with his prior requests for compensatory damages.  If McBeth were permitted to seek rescissory damages on the Loans Claim at such a late stage of the case, Defendants would be improperly and substantially prejudiced in several different ways.  To begin with, if McBeth had sought rescissory damages on the Loans Claim when seeking the Court's leave to file a Third Amended Complaint two years ago in November 2016, then Defendants would not have devoted significant resources to preparing jury instructions and a verdict form[14] on "[a]n equitable claim … for the court, not the jury, to decide." *Royal Am. Managers*, 885 F.2d at 1019 n.4.  Instead, Defendants would have devoted those resources to preparing proposed findings of fact and conclusions of law in accordance with the Court's Individual Rules and Practices in Civil Cases (the "Individual Rules").  (*See* Individual Rules, 5(B)(iii).)[15]

        Further, if the Court allows McBeth to seek rescissory damages, Defendants will be forced "'to expend additional resources to conduct discovery and prepare for trial,'" which would "'significantly delay the resolution of this dispute.'" *Smith*, 2014 WL 4384104, at *10 (quoting *Block*, 988 F.2d at 350).  Defendants will have to expend additional resources bringing

---

[14]    (*See* Joint Pretrial Statement, dated Aug. 1, 2018, Exs. 10, 12, ECF Nos. 177-10, 177-12.)

[15]    It is also possible that, by failing to seek rescissory damages in November 2016 when he sought the Court's leave to file his Revised Third Amended Complaint, McBeth forced Defendants to incur unnecessary summary judgment costs on the Loans Claim because the Court would not have permitted those arguments.  This Court's Individual Rules specify that "[a]bsent good cause, the Court will not ordinarily have summary judgment practice in a non-jury case."  (Individual Rules, ¶ 3(C)(i).)

a motion to bifurcate the trial so that the jury tries the legal claims – *i.e.*, the Performance Statistics Claim – and the Court tries the Loans Claim.  Defendants will also oppose any effort by McBeth to have the jury render an advisory ruling on the Loans Claim.[16]  Defendants will expend resources preparing proposed findings of fact and conclusions of law on the Loans Claim.  Defendants will have to amend their previously submitted jury instructions and special verdict form to remove any material that relates to the Loans Claim.  And Defendants' hedge fund accounting expert will have to amend his report to reflect that the Court – not the jury – will be considering highly technical accounting issues relating to the Loans Claim.[17]

Defendants would also be prejudiced if McBeth were permitted to seek rescissory damages on the Loans Claim because it would substantially increase the amount of damages on the eve of trial.  Courts in the Second Circuit have found that "[u]ndue prejudice results when a proposed complaint dramatically changes the nature of the allegations and the extent of a defendant's liability."  *Pkfinans Int'l Corp. v. IBJ Schroeder Leasing Corp.*, 1996 WL 84481, at *3 (S.D.N.Y. Feb. 27, 1996); *see also Kirlin v. Conopco, Inc.*, 1996 WL 263026, at *2 (S.D.N.Y. May 16, 1996) (denying motion to assert fraud claims "after discovery [was] nearly complete" because, among other things, "the amendment would substantially increase the damages claimed by adding a substantial punitive damages claim"); *cf. Bridgeway Corp. v. Citibank, N.A.*, 2003 WL 402790, at *4 (S.D.N.Y. Feb. 20, 2003) (denying leave to assert new damages theory because, in relevant part, "the request comes too late"); *Ross v. Global Bus. School, Inc.*, 2001 WL 1006656, at *6, *7 (S.D.N.Y. Aug. 30, 2001) (denying plaintiff's motion to "increase the

---

[16]    In his opposition to Defendants' motion *in limine*, McBeth wrote "[i]f the Court decides that rescissory damages can only be awarded in equity, it may also choose to simplify matters by ordering, pursuant to Fed. R. Civ. P. 39(c)(1), that the trial jury hearing Mr. McBeth's legal claims also render an advisory ruling on Mr. McBeth's damages claim sounding in equity."  (MIL Opp., ECF No. 198, at 8 n.10.)

[17]    For all those reasons, McBeth's request to change his remedy from compensatory damages to rescissory damages should be denied under a Rule 15 analysis as well because it is unduly prejudicial.

amount of monetary damages he is claiming" when, among other things, "[p]laintiff has failed to offer a reasonable explanation for his delay in requesting leave to amend").

McBeth sought compensatory damages when he brought his motion for leave to file a Third Amended Complaint on November 29, 2016, and when he filed the operative Third Amended Complaint on March 28, 2018.  (*See* RTAC, ECF No. 101-1, at ¶ 129(a); TAC, ECF No. 149, at ¶ 129(a).)  One month after filing the Third Amended Complaint, McBeth served Defendants with the Amended Expert Report of Edward S. O'Neal, Ph.D (the "O'Neal Report"),[18] in which O'Neal opined that McBeth's "rescissory damages" on the Loans Claim were an astounding $6.4 million.  (O'Neal Report at ¶¶ 20-21.)

McBeth's request for $6.4 million in rescissory damages significantly exceeds any possible recovery under a compensatory damages theory.  McBeth's compensatory damages on the Loans Claim would be "measured by the plaintiff's out-of-pocket, actual loss."  *Yu v. GSM Nation LLC*, 2018 WL 2272708, at *17 (Del. Super. Ct. Apr. 24, 2018).  In its March 9, 2018 oral ruling, the Court held that the "gravamen of plaintiff's loan claims is that these were not loans at all, but rather capital contributions disguised as loans in order to ensure that if the fund went under, Porges could jump the queue and get his money back before plaintiff[.]" (3/9/18 Tr. at 11:3-7.)  McBeth's compensatory damages on the Loans Claim – *i.e.*, his "out-of-pocket, actual loss" – would therefore be his pro rata share of the "capital contributions disguised as loans" (*id.*) that were repaid to Porges in the Spectra Fund's dissolution.  McBeth has alleged that "[i]n total, Porges received $1,068,000 of the $1,440,586.94 that belonged to the Spectra Fund[.]"  (TAC, ECF No. 149 at ¶ 94; FAC, ECF No. 200-1 at ¶ 76.)  Given that McBeth had approximately 28% of the Spectra Fund's equity – *i.e.*, $5 million as compared to Spectra

---

[18]     The O'Neal Report has previously been filed at ECF No. 180-1 and ECF No. 197-23.

Investment Group's $12.5 million[19] – and the Spectra Fund already paid McBeth $197,707,[20] McBeth's compensatory damages on the Loans Claims would be a negligible fraction of the $6.4 million that McBeth is now trying to seek in rescissory damages.

If McBeth is permitted to change his remedy on the Loans Claim, Defendants would be improperly and substantially prejudiced.  The Court would be allowing McBeth to transform a comparatively low-value claim into a $6.4 million claim on the eve of trial – after McBeth failed to identify this relief in five previous complaints as well as his Federal Rule of Civil Procedure 26 disclosures.[21]

### C.    McBeth's Request to Change His Remedy from Compensatory Damages to Rescissory Damages Amounts to Bad Faith.

McBeth's belated request for rescissory damages was also brought in bad faith. Courts have made clear that "'[a] finding that a party is seeking leave to amend solely to gain a tactical advantage … supports a finding that such an amendment is made in bad faith.'" *Blagman v. Apple, Inc.*, 307 F.R.D. 107, 114 (S.D.N.Y. 2015); *see also Youngsbloods v. BMG Music*, 2011 WL 43510, at *9 (S.D.N.Y. Jan. 6, 2011) ("While not much case law exists in this Circuit about what constitutes bad faith for the purpose of denying a motion for leave to amend a pleading, '[a] finding that a party is seeking leave to amend solely to gain a tactical advantage, … supports a finding that such an amendment is made in bad faith.'").

There is not a single, legitimate justification as to why McBeth waited until the eve of trial to sandbag Defendants with a rescissory damages theory that materially increases

---

[19]    (*See* Joint Pretrial Statement, Stipulations of Fact and Law, Ex. 1, ECF No. 177-1, at ¶¶ 21-22, 25-27.)

[20]    (*See* Third Amended Complaint, ECF No. 149 at ¶ 99; Fourth Amended Complaint, ECF No. 200-1 at ¶ 81; Joint Pretrial Statement, Stipulations of Fact and Law, Ex. 1, ECF No. 177-1, at ¶ 28.)

[21]    Defendants highlighted this fact in their opposition to McBeth's motions *in limine*:  "In both his interrogatory responses and initial disclosures, McBeth wrote that he was seeking 'compensatory damages.'  (Griffin 8/29/18 Decl., Ex. 24 at 8, Ex. 25 at 9.)  McBeth has never amended those responses, even though he is now – contrary to the relief he sought in the Third Amended Complaint – trying to seek 'rescissory damages.'" (Defendants' Memorandum of Law in Opposition to Plaintiff's Motion *In Limine*, dated Aug. 29, 2018, ECF No. 195, at 15.)

Defendants' potential exposure on the Loans Claim.  The only plausible explanation is that

McBeth has sought to obtain a "tactical advantage" by laying in the weeds, representing in

various complaints that he would seek compensatory damages and a jury trial, causing

Defendants to plan their litigation strategy based on those pleadings, and then – as a last-minute,

pre-trial pressure tactic – surprising Defendants with a drastically different damages theory.  The

Court should not condone this bad faith.

## III.    THE COURT SHOULD DENY MCBETH'S MOTION TO REASSERT ALLEGATIONS THAT RELATE TO DISMISSED CLAIMS

The Court should reject McBeth's attempts to reassert "allegations that supported

now-dismissed claims but are probative of claims that are still in the case."  (Pl. Br. at ¶ 1.)

Contrary to McBeth's arguments, McBeth's proposed Fourth Amended Complaint is littered

with allegations that are objectively irrelevant to the Performance Statistics Claim and the Loans

Claim – the only two claims left in the case.  Instead, he has reasserted allegations that address

theories of liability that have been dismissed in prior rulings.[22]

As background, the Court has issued two rulings regarding McBeth's theories of

liability.  On March 21, 2016, the Court dismissed McBeth's fraudulent and negligent

misrepresentation claims; breach of contract claims centered on Defendants' alleged failure to

follow a promised strategy and Defendants' purported looting or misappropriation of the Spectra

Fund's assets; and unjust enrichment and promissory estoppel claims.  (*See* 3/21/16 Op. at 13-14,

15-18, 18-20, 25-26.)  On March 9, 2018, the Court dismissed McBeth's claims "sounding in

both contract and breach of fiduciary duty … that defendants engaged in grossly negligent

trading," as well as McBeth's claims which "stemmed from defendants' alleged delay in

---

[22]    Defendants do not object to McBeth's removal of paragraphs from his previously filed Third Amended Complaint that he concedes are no longer relevant to his remaining claims.  (Pl. Br. at ¶ 10.)  Therefore, the remainder of this argument addresses the paragraphs in the newly proposed Fourth Amended Complaint that are irrelevant to the Performance Statistics Claim and the Loans Claim, and instead relate to dismissed claims.

providing plaintiff with certain required monthly reports and one annual report." (3/9/18 Tr. at 3:9-5:16, 5:17-7:6.)

In its March 9, 2018 ruling, the Court also permitted McBeth to assert two theories of liability in a Third Amended Complaint. The first is the Performance Statistics Claim – *i.e.*, "that defendants engaged in fraudulent and/or negligent misrepresentation by excluding certain low-performing funds from the historical performance statistics they disclosed to plaintiff, and by adding certain administrative expenses back into net income." (*Id.* at 7:8-13.) The second is the Loans Claim – *i.e.*, "that defendants committed a breach of contract and breach of fiduciary duty insofar as Porges made certain undisclosed and disguised loans to prop the fund up as it neared its demise." (*Id.* at 7:14-17.) Regarding the Loans Claim, the Court explained as follows:

> I conclude that there are material disputes of fact with respect to plaintiff's proposed loan claims as well. Once again, defendants make colorable arguments for dismissal, for example, that defendants were permitted by contract to take out loans; that the loans did not harm plaintiff because they were meant to save the fund; that plaintiff was not harmed because he was not a creditor; and that plaintiff failed to bring the claims within the statute of limitations.
>
> The statute-of-limitations argument aside, however, these contentions largely miss the point of plaintiff's claims. *That is, the gravamen of plaintiff's loan claims is that these were not loans at all, but rather capital contributions disguised as loans in order to ensure that if the fund went under, Porges could jump the queue and get his money back before plaintiff and other investors.* If that is true … then a reasonable jury could certainly reject defendants' arguments.

(*Id.* at 10:17-11:14 (emphasis added).)

Contrary to McBeth's arguments in his motion, significant portions of the Fourth Amended Complaint are entirely irrelevant to those remaining claims. To begin with, McBeth is

trying to exploit the Court's ruling on the Loans Claim to reassert a theory that the Spectra

Fund's use of loans and/or leverage improperly increased the Spectra Fund's risk.  For example,

in Paragraph 7, McBeth alleges that "[b]eginning in January 2011, Porges began surreptitiously

to use his own money to meet the Fund's margin calls and to ensure that the Fund could maintain

maximum leverage" and "Porges apparently intended to gamble the fund back to profitability,

but, at the same time, he wanted to insulate his money as fully as possible from the risks of

leverage[.]"  (FAC, ECF No. 200-1, ¶ 7.)

McBeth makes similar allegations elsewhere.  (*See id.* at ¶ 57 ("Beginning in

January 2011, Porges made the decision to support the Fund using his own capital, so that the

Fund could maintain this extreme leverage."); *id.* at ¶ 58 ("Porges devised a strategy for

maintaining leverage while insulating his capital contributions to the Fund from potential losses.

… The loans were used to meet margin calls caused by the Fund's excessive use of leverage[.]");

*id.* at ¶ 59 ("All aspects of these transactions were a sham, designed to protect Porges' new

investments in the Fund from the likely and foreseeable result of mixing extreme leverage and

reckless trading[.]"); *id.* at ¶ 61 ("Rather than conserving assets by de-levering or taking

defensive positions, Defendants … kept going full steam ahead[.]"); *id.* at ¶ 99 (the loans

"enabled Porges to pursue his own agenda of using maximum leverage").

These allegations are irrelevant to the Loans Claim that the Court permitted in its

March 9, 2018 ruling.  The Court did not give McBeth carte blanche to argue that Defendants

may be held liable for anything remotely related to the Spectra Fund's use of leverage and loans.

In fact, the Court noted Defendants' "colorable argument[] for dismissal … that defendants were

permitted by contract to take out loans."  (3/9/18 Tr. at 10:19-21.)  Instead, the Court allowed

McBeth to proceed with a discrete theory that "these were not loans at all, but rather capital

contributions disguised as loans in order to ensure that if the fund went under, Porges could jump the queue and get his money back before plaintiff and other investors." (*Id.* at 11:3-7.) McBeth's allegations regarding the use of loans to "maintain this extreme leverage" and support "extreme leverage and reckless trading" are akin to the breach of contract claim that the Court rejected at the motion to dismiss stage (*see* 3/21/16 Op. at 15-17) and/or the grossly negligent trading claim that the Court dismissed on summary judgment (*see* 3/9/18 Op. at 3:9-5:16).[23] Either way, allegations about "extreme leverage and reckless trading" are irrelevant to whether Defendants purportedly disguised capital contributions as loans to ensure that they could get their money back before McBeth if the Spectra Fund were to collapse – the specific theory that the Court allowed McBeth to pursue at trial.

McBeth does not explain in his motion why allegations relating to "extreme leverage and reckless trading" remain relevant. But in his opposition to Defendants' motions *in limine*, McBeth contended that "[t]he conclusion that Mr. Porges acted in a manner that substantially increased the risk of loss of Mr. McBeth's investment is probative of whether he acted in a manner inconsistent with his obligations as a fiduciary[.]" (MIL Opp. at 15.) McBeth, however, does not have an amorphous claim alleging that Porges acted inconsistently with his fiduciary obligations generally – McBeth has a specific claim about whether loans to the Spectra Fund were disguised capital contributions designed to ensure that the Spectra Fund's principals could get their money back before McBeth. (3/9/18 Tr. at 11:3-7.) McBeth cannot use the existence of one type of breach of fiduciary duty claim to make arguments about other alleged breaches of fiduciary duty that have been dismissed by the Court.

---

[23]     For example, in the Court's motion to dismiss ruling, the Court dismissed McBeth's breach of contract claim based on the use of leverage: "What is more, the Memorandum explicitly authorized, and provided notice to McBeth regarding, the specific strategies which he now complains. For example, McBeth alleges that Defendants violated the Memorandum by '… using maximum leverage' … . But the Offering Papers expressly provided that that Spectra … could incur 'significant' leverage that would 'amplify net profits and losses[.]'" (3/21/16 Op. at 16.)

Other aspects of the Fourth Amended Complaint also exceed the scope of the case that the Court permitted to go forward.  McBeth cannot claim that he was "induced to invest in [the Spectra Fund] based on claims that it employed a conservative strategy," or that Defendants made "representations … to McBeth about the safety of investing in the Fund[.]"  (FAC, ECF No. 200-1, at ¶¶ 1, 56.)  The Court dismissed McBeth's theory that "Defendants did not intend to manage the Fund as represented to McBeth" (3/21/16 Op. at 14) and rejected McBeth's breach of contract claim "premised on the theory that Defendants failed to follow a promised investment strategy" because "McBeth was on notice that Defendants' investment strategy would not necessarily be, as he now contends, conservative and risk adverse."  (3/21/16 Op. at 14, 15-17.)  McBeth's argument that these types of allegations remain "highly relevant and probative of the Performance Statistic Claim" (MIL Opp. at 22-23) does not make any sense.  McBeth's assertions relating to the "safety of investing in the Fund" and the Spectra Fund's purportedly "conservative strategy" have nothing to do with whether the historical performance statistics excluded market making accounts or added back expenses.

Nor can McBeth allege that "Defendants cannot articulate how a single investment decision was made over the course of the Fund's existence, much less how it suffered such catastrophic losses."  (FAC, ECF No. 200-1, at ¶ 6.)  McBeth's assertion plainly relates to his theory that Defendants engaged in grossly negligent trading, which was dismissed by the Court.  In dismissing McBeth's gross negligence theory, the Court explained that "the best plaintiff can do is argue that the absence of evidence supports an inference that defendants did not engage in a rational decision-making process," and cited pages 31-32 of McBeth's summary judgment opposition brief.  (3/9/18 Tr. at 4:16-20.)  At page 32 of McBeth's summary judgment opposition brief, McBeth wrote that Defendants "cannot explain what caused the Fund's losses,

because Porges supposedly cannot recall virtually any of the Fund's investments or investment decisions." (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, dated Apr. 10, 2017, ECF No. 118, at 32.) McBeth does not offer any explanation as to why these types of allegations remain relevant to the Performance Statistics Claim or the Loans Claim – claims that have nothing to do with the particular investment decisions that brought about the Spectra Fund's losses.

McBeth cannot assert that "Rose explained that earlier in his career Porges had lost a significant portion of the investment capital provided to him by outside investors," and "[t]his was a surprise to McBeth, as neither Rose nor Porges had disclosed this and McBeth would never have invested in the Fund if he had known." (FAC, ECF No. 200-1, at ¶ 71.) That allegation relates to a misrepresentation theory that the Court dismissed more than two years ago – namely, alleged misrepresentations about whether "Porges had previously lost investment capital provided to him by outside investors." (3/21/16 Op. at 13.) McBeth contends that this allegation remains relevant to the Performance Statistics Claim because "through the marketing materials provided to McBeth, Defendants hid from him the [allegedly] substantial losses that had occurred in the Fund's predecessor entities." (MIL Opp. at 22.) That argument is baseless. The Performance Statistics Claim turns, in relevant part, on whether certain accounts were excluded from the historical performance statistics – not whether "earlier in his career Porges had lost … investment capital provided to him by outside investors." McBeth does not have any evidence to support this allegation, it relates entirely to a dismissed claim, and he should not be able to make these types of arguments at trial.

McBeth cannot argue at trial that "Defendants effectively kept [McBeth] in the dark about the status of his investment by their failure to provide monthly account statements."

(FAC, ECF No. 200-1, at ¶ 9; *id.* at ¶¶ 63, 67, 69.)  In its March 9, 2018 ruling, the Court dismissed McBeth's claims based on "defendants' alleged delay in providing plaintiff with certain required monthly reports and one annual report."  (3/9/18 Tr. at 5:17-7:6.)  McBeth's argument that these types of allegations remain relevant "of when Mr. McBeth learned about the loss of his investment and why it took him so long to do so" (MIL Opp. at 24) is a red herring. The record clearly shows that McBeth knew about his losses throughout 2011, and even turned down a chance to discuss those losses with Porges.  (Griffin 9/12/18 Decl., Ex. 2.)  The Court should not permit McBeth to make allegations at trial relating to Defendants' purported "failure to provide monthly account statements" because they relate to a dismissed claim.

Finally, McBeth asserts that Defendants breached their fiduciary duties by "concealing material information from McBeth," and contends "[h]ad he learned of any of this information, he would have withdrawn his capital or brought suit in response."  (FAC, ECF No. 200-1 at ¶ 104.)  This allegation is inconsistent with McBeth's representation in his opposition to Defendants' motion *in limine* that he will not pursue a holder theory on his breach of fiduciary duty claims which are governed by Delaware law.  (*See* MIL Opp. at 8.)  If McBeth is not pursuing a holder theory on his breach of fiduciary duty claims, then he cannot plead a breach of fiduciary duty based on Defendants' purported concealment of information that prevented him from withdrawing.  And if he is pursuing a holder theory on his breach of fiduciary duty claims, then the Court should reject it because it is not actionable under Delaware law.  (*See* Combined Memorandum of Law in Support of Defendants' Motions *In Limine*, ECF No. 179, at 12-13.)[24]

## CONCLUSION

McBeth's motion should be denied in its entirety.

---

[24]     Defendants will not challenge McBeth's ability to argue that Defendants promised to repay McBeth, to the extent McBeth is making those arguments for statute of limitations purposes.  (*See* MIL Opp. at 23.)

Dated: New York, New York           SCHULTE ROTH & ZABEL LLP
September 12, 2018

By: <u>s/ Howard Schiffman</u>
   Howard Schiffman
   Robert E. Griffin

919 Third Avenue
New York, New York  10022
(212) 756-2000

Howard.Schiffman@srz.com
Robert.Griffin@srz.com

*Attorneys for Defendants Gregory I. Porges,*
*Spectra Financial Group LLC, and Spectra*
*Investment Group LLC*